# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES TERRY BROWN, | ) | |
| Plaintiff, | ) | Civil Action No. 7:14cv00050 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VDOC, *et al.*, | ) | By: Michael F. Urbanski |
| Defendants. | ) | United States District Judge |

James Terry Brown, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. 1983, alleging that the defendants were deliberately indifferent to a serious risk of harm. The defendants moved for summary judgment and Brown responded thereto, making this matter ripe for disposition. Having reviewed the record, the court finds that the defendants are entitled to summary judgment and, therefore, will grant their motion.

I.

On September 18, 2013, while Brown was housed at Keen Mountain Correctional Center ("KMCC") in the segregation unit, defendants Internal Affairs Special Agent Quillen and KMCC Investigator Sgt. Arms interviewed Brown and inmate Boone, separately and privately, about an envelope that Arms received which contained two letters discussing plans for Boone to assist Brown with escaping from KMCC and assaulting KMCC Warden Fleming. The letters also contained information about Brown paying $5,000.00 to Boone's mother for Boone's assistance. Brown alleges that Quillen and Arms "relayed" the information they learned in Brown's interview to Boone and consequently, Brown was "labeled a snitch" and Boone put a "hit out on" Brown's life.

On October 3, 2013, Brown was transferred from KMCC to Wallens Ridge State Prison ("WRSP"). On October 31, 2013, Brown submitted an informal complaint at WRSP stating that

his life was in danger because of an alleged "hit" on his life, and defendant Lt. McBride responded by telling Brown that if there were any inmates that Brown would like to place on his "enemy/keep separated list," he could request "enemy summary forms" and submit them to his counselor for review. Unsatisfied with this response, Brown filed a regular grievance on November 4, 2013, and defendant Warden Holloway upheld McBride's response and deemed Brown's grievance unfounded. Boone was added to Brown's enemy/keep separated list along with one other inmate.

On November 26, 2013, Brown appealed to defendant Regional Administrator Hinkle, stating that his "life [was] in danger and [he was] being verbally abused day and night [by] gang members due to information he gave to [the] Special Investigator Unit" about Boone and Warden Fleming. Hinkle upheld Holloway's decision that the grievance was unfounded.

Brown argues that the defendants were deliberately indifferent to a serious risk of harm when defendants Arms and Quillen "relayed" Brown's information to Boone, and when defendants McBride, Holloway, Collins, and Hinkle denied Brown's grievances and appeals concerning the matter.[1]

Defendants filed a motion for summary judgment, supported by affidavits. Defendants state that during the interviews, both Brown and Boone admitted to writing the letters. Defendants also state that the information learned during each interview was not shared with the other inmate.

---

[1] The court notes that although Brown alleges that Collins denied his grievance and/or appeal in this matter, he does not elaborate on the grievance and/or appeal that Collins allegedly denied and does not provide a copy of that grievance or appeal.

Defendants state that while Brown was at KMCC, he was housed in segregation nearly the entire time.[2] Inmates housed in segregation at KMCC remain in their cells most of the day and do not have direct contact with other inmates. An inmate's out of cell activities are limited to showers, recreation, and going to the medical department, and two correctional officers escort inmates to and from all out of cell activities. When inmates are showering, they are not allowed to come into contact with each other. They are placed inside an individual shower where they remain locked in until they are escorted back to their cells. When inmates participate in their minimum of one hour of out-of-cell exercise five days per week, they are placed in individual recreation cages and do not have direct physical contact with other inmates. An inmate is monitored by staff at all times during recreation.

Defendants also state that when an inmate alerts KMCC staff that he is in fear of his life because of another inmate, both inmates are immediately separated and placed into segregation while an investigation is launched into the allegations. After the investigation is completed, if the allegations prove to be true, an enemy/keep separated form is completed regarding the other inmate. Additionally, if the allegations are true, it is likely that the inmates will be housed at separate institutions. In Brown's case, he was already in segregation, and was already separated from other inmates. Arms states that while Brown was housed at KMCC, Brown never expressed that he was in fear of his life or that he felt he was in any imminent danger of being harmed by another inmate.[3]

---

[2] Brown arrived at KMCC on April 18, 2013, was placed and segregation on April 23, 2013, where he stayed until he was transferred to Wallens Ridge State Prison on October 3, 2013. The court notes that when, and at all times after, the defendants questioned Brown regarding the letters on September 18, 2013, Brown was housed in segregation.

[3] The court notes that Brown did not file any grievances related to the interview until after he was transferred to WRSP.

3

In addition, defendants state that at all times while Brown was at WRSP, he was housed in segregation where, like at KMCC, he had no direct contact with other inmates and where he was escorted by correctional officers any time he left his cell. On August 15, 2014, Brown was transferred from WRSP to Red Onion State Prison, where he is currently housed.

In response to defendants' motion for summary judgment, Brown concedes that he is "not in direct, physical contact with any other inmates who would be in a position to cause bodily harm," but alleges that he is "being verbally abused and threatened." Brown argues that he will face a "serious" risk of harm if he ever has to go into general population housing.

In addition, Brown's response to the defendants' motion elaborates on his allegation that Arms and Quillen "relayed" Brown's information to Boone. Brown states that he and Boone were "pulled out separately" into a room in the segregation building, everybody saw them being escorted out, and it does not "take a rocket scientist to figure out who [they] went to see when all could see who called [them] out." Brown explains that Boone would have to know that Brown gave Arms and Quillen information if Boone did not provide Arms and Quillen with the information.

Finally, Brown also alleges that he has suffered an emotional injury because he starts to breathe hard and his heart "jump[s] fast" if a correctional officer knocks on his door while he sleeps.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

4

entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

### III.

Brown alleges that defendants Holloway, Collins, McBride, and Hinkle "upheld decisions detrimental to [his] health and safety" when they responded to his various informal complaints, regular grievances, or grievance appeals. However, the court finds that Brown's allegations are insufficient to state a claim against these defendants and, therefore, will grant defendants' motion for summary judgment as to these defendants.

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the constitution of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). However, a "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation" and inmates do not have a constitutionally protected right in the grievance procedure, thus, there is no liability under § 1983 for a prison administrator's response to a grievance or appeal. See Brown v. Va. Dep't Corr.,

5

No. 6:07cv33, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009) (citing Adams v. Rice, 40 F.3d 75, 75 (4th Cir. 1994) (superseded on other grounds)); see also Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the alleged underlying deprivation); DePaola v. Ray, No. 7:12cv139, 2013 U.S. Dist. LEXIS 117182, at *22-23 (W.D. Va. July 22, 2013); Strickland v. Militana, No. 7:12cv5, 2013 U.S. Dist. LEXIS 67237, at *27 (W.D. Va. Mar. 26, 2013). Therefore, the above-named defendants' after-the-fact responses to Brown's grievances fall short of establishing § 1983 liability.

Further, to the extent Brown claims that the above-named defendants are liable in their supervisory capacities solely for the acts or omissions of their subordinates, those claims also fail because it is clearly established that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Robertson v. Sichel, 127 U.S. 507, 515-16 (1888); Dunlop v. Munroe, 11 U.S. 242 (1812). Thus, "because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each defendant, through the defendant's own individual actions, has violated the Constitution. Iqbal, 556 U.S. at 676. Other than alleging these defendants responded to grievances, Brown has not alleged that they were personally involved in the alleged violation of his constitutional rights. See Garraghty v. Va. Dep't of Corr., 52 F.3d 1274, 1280 (4th Cir. 1995); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); and Barrow v. Bounds, 498 F.2d 1397 (4th Cir. 1974). For the foregoing reasons, the court will grant summary judgment to defendants Holloway, Collins, McBride, and Hinkle.

## IV.

Brown alleges that defendants Quillen and Arms placed him in danger of future harm or death when they interviewed him and then "relayed" Brown's information to Boone. The court finds that Brown has not demonstrated that Quillen and Arms were deliberately indifferent to a specific, known risk of harm and, therefore, will grant defendants' motion for summary judgment as to these defendants.

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). More specifically, it imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833; Odom v. South Carolina Dep't of Corr., 349 F.3d 765 (4th Cir. 2003). Prison officials who are deliberately indifferent to "specific known risks of such harm," violate an inmate's Eighth Amendment right to be free from physical harm inflicted by other inmates. Pressly v. Huto, 816 F.2d 977, 979 (4th Cir. 1987) (citing Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979)).

To establish that prison officials are liable under § 1983 for failure to protect, a plaintiff must show: (1) serious or significant physical or emotional injury, and (2) that the prison officials had a sufficiently culpable state of mind. Farmer, 511 U.S. at 834; Odom, 349 F.3d at 770; De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). As to the first prong, the deprivation alleged must be, "objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834. As to the second prong, the requisite state of mind is one of "deliberate indifference" to the inmate's health or safety. Farmer, 511 U.S. at 834.

To establish deliberate indifference to an inmate's health or safety, a plaintiff must first show that prison officials subjectively recognized a substantial risk of harm; "it is not enough

7

that the officers should have recognized [the substantial risk of harm] . . . they actually must have perceived it." Parrish v. Cleveland, 372 F.3d 294 (4th Cir. 2004) (citing Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)). Second, a plaintiff must show that prison officials subjectively recognized that their actions were "inappropriate in light of that risk"; it is not enough that officers should have recognized that their actions were inappropriate. Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001); Rich, 129 F.3d at 340 n.2.

In this case, the only injury that Brown alleges is an "emotional injury" where he startles from sleeping if a correctional officer knocks on his door. The court finds that this "injury" is insufficient to support an actionable Eighth Amendment claim. See Farmer, 511 U.S. at 834. Further, although Brown first alleged that Arms and Quillen "relayed" the information that Brown gave them to Boone, in his response to the motion for summary judgment, Brown clarifies that Boone had to know that Brown gave Arms and Quillen information by way of deduction and because other inmates saw the defendants take Brown out of his cell to be interviewed. There is no evidence that the defendants told Boone what information Brown provided to them. When Arms and Quillen took Brown and Boone out of their cells, separately and at different times, to interview them about the letters, there is no evidence which suggests that they knew what information the inmates would provide them, that the information that would be provided them would possibly subject either of the inmates to a substantial risk of harm, or that investigating the letters, which contained escape and assault plans, was inappropriate in light of any risk to the inmates. Therefore, I cannot find that Brown has demonstrated that the defendants acted with deliberate indifference to Brown's health or safety. Moreover, before and at all times since the investigation, Brown has been housed in segregation

8

where he has no physical contact with other inmates.[4] In addition, Boone is on Brown's enemy/keep separated list and Brown may add other inmates to that list in accordance with Virginia Department of Corrections procedure. Based on the foregoing, the court will grant summary judgment to defendants Arms and Quillen.[5]

Entered: February 3, 2015

*Michael F. Urbanski*

Michael F. Urbanski
United States District Judge

---

[4] To the extent Brown complains that other inmates are verbally abusing and threatening him, these allegations fail to state a constitutional claim. Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005)

[5] Brown also names the Virginia Department of Corrections ("VDOC") as a defendant. However, the VDOC, as a department of the Commonwealth of Virginia, is not a "person" subject to a § 1983 action. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989). Accordingly, the court will grant summary judgment as to the VDOC as well.